# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Dominique T.,[1]

                                        Plaintiff,

      v.                                        5:24-CV-1532
                                                    (MJK)


Frank Bisignano,
Commissioner of Social Security

                                        Defendant.

---

Howard D. Olinsky Esq., for Plaintiff
Fergus J. Kaiser Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION & ORDER

Dominique brought this action under the Social Security Act (42

U.S.C. § 405(g)) seeking judicial review of the Social Security

Commissioner's final decision denying her application for benefits. (Dkt.

1.). Dominique consented to the jurisdiction of a Magistrate Judge.

(Dkt. 4). Both parties filed briefs (Dkts. 13, 15, 16) which the Court

treats as motions under Fed. R. Civ. P. 12(c), in accordance with

General Order 18.

---

[1] This Decision will identify the plaintiff using only her first name and last initial to protect her privacy.

## I.    PROCEDURAL HISTORY

On July 28, 2021, Dominique filed an application for Title XVI supplemental social security income benefits, alleging disability beginning March 5, 2021. (T. 10).[2] The Social Security Administration ("SSA") denied the claims initially on January 24, 2022, and again upon reconsideration on November 3, 2022. (*Id.*). Dominique requested a hearing 18 days later. (*Id.*) The SSA granted the request and Administrative Law Judge ("ALJ") Kenneth Theurer held a telephonic hearing on March 29, 2024. (T. 40-67). At the hearing, non-attorney advocate Kimberly MacDougall represented Dominique. (T. 43). Both Dominique and Vocational Expert, Victor Alberigi, testified. (T. 46-61; 61-66). On April 11, 2024, ALJ Theurer issued an unfavorable decision. (T. 7-20).

## II.    GENERALLY APPLICABLE LAW

The parties are familiar with the five-step-sequential analysis ALJs use to evaluate disability insurance and supplemental security income claims, so the Court need not repeat it. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Petrie v. Astrue,* 412 F. App'x 401, 404 (2d

---

[2] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

Cir. 2011) (summary order) (describing the five-step-sequential analysis). As to the substantial evidence standard: substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

## III.  FACTS

The record includes Dominique's medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims, as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step-sequential analysis, ALJ Theurer determined that Dominique has "not engaged in substantial gainful activity since July 1, 2021, the application date." (T. 12) (cleaned up).

At step two, ALJ Theurer held that Dominique "has the following severe impairments: lupus erythematosus, fibromyalgia, psoriatic arthritis, cervical degenerative disc disease, asthma, and recurrent cerumen impaction of both []ears with left side hearing loss." (*Id.*).

Next, ALJ Theurer discussed the "paragraph B" criteria. (T. 12-13). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, ALJ Theurer found that Dominique "has no more than mild limitation[s] in any of" the four broad areas of mental functioning. (T. 13) (emphasis removed).

At step three, ALJ Theurer determined that Dominique did not "have a single impairment, or combination of impairments, that equaled the severity of impairments listed in 20 C.F.R Part 404, subpt. P, app. 1." (T. 15) (citations omitted).

After this, ALJ Theurer determined that Dominique had the residual function capacity ("RFC") to perform:

> a range of light work, as defined in 20 CFR 416.967(b). Specifically, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently, sit for up to six hours, and stand or walk for approximately six hours in an eight-

hour day with normal breaks. She can never climb ladders, ropes, or ladders, but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She can also occasionally reach overhead with her right upper extremity. The claimant should avoid working at unprotected heights or in conjunction with dangerous machinery. She should also avoid exposure to concentrations of smoke, dust, and respiratory irritants or more than moderate levels of noise, as defined in the Dictionary of Occupational Titles.

(T. 15).

To make this finding, ALJ Theurer considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*).

At step four, ALJ Theurer found that Dominique "has no past relevant work," is within the "younger individual age 18-49" category, "has a limited education," and "transferability of skills is not an issue." (T. 18) (cleaned up).

Finally at step five, ALJ Theurer held that "considering" her "age, education, work experience, and residual functional capacity," Dominique "is capable of making a successful adjustment other work that exist in significant numbers in the national economy." (T. 19-20). Accordingly, ALJ Theurer determined that Dominique is not disabled as defined by the Social Security Act. (T. 20).

## V.    ISSUES IN CONTENTION

Dominique argues that substantial evidence does not support ALJ Theurer's RFC determination because the ALJ only relied on objective clinical evidence—in the fibromyalgia context—when performing the supportability and consistency analyses on Nancy Gaskill P.A.'s medical opinion. (Pl. Br. at pgs. 9-15). In opposition, the Commissioner argues that substantial evidence supports ALJ Theurer's decision. (Def. Br. at 5-10).

## VI.    DISCUSSION

**ALJ Theurer's decision is remanded because his supportability and consistency analyses failed to look past the objective clinical findings even though Dominique suffers from fibromyalgia.**

Fibromyalgia is "a disease that eludes" objective "measurement." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d. Cir. 2003). "There are no objective tests which can conclusively confirm the disease." *Id.* (internal citations omitted). So "objective findings are not required to find that an applicant is disabled." *Id.* (internal citation omitted). As a result, ALJs cannot "rely solely on objective evidence—or lack thereof— related to fibromyalgia;" they "must consider all relevant evidence, including the longitudinal treatment record." *Anysha M. v. Comm'r of*

*Soc. Sec.*, No. 19-CV-0271 (CFH), 2020 WL 1955326 at *3 (N.D.N.Y. 2020) (cleaned up).

Dominique has a long history of fibromyalgia symptoms. In 2018, Dominique reported pain in her hands, knees, neck, hips, and ankles. (T. 335). Her provider noted that she suffered from joint swelling, joint stiffness, joint pain, neck pain, and myalgias. (T. 337). Ultimately, the provider identified "12+ tender fibromyalgia points." (*Id.*). The following year, Dominique continued to report body aches and morning stiffness. (T. 340). In February 2020, Domonique still suffered from soft tissue swelling in her left wrist and several tender points. (T. 356). A year later, Dominique reported "symptoms of arthralgia in her hands, wrists, elbows, shoulders[,] and knees with 15 minutes of morning stiffness." (T. 546). She also suffered from pain in her ankles and hips. (*Id.*). In April 2021, Dominique continued reporting "pain in her hips/shoulders/fingers/lower back, with morning stiffness lasting 15 minutes." (T. 612). In January 2022, Consultative Examiner, Elke Lorensen, M.D., assessed Dominique. (T. 1117-20). During that examination, Dr. Lorensen noted, among other things, "four positive trigger points . . . for fibromyalgia[.]" (T. 1119).

In March 2022, Dominique began to show improvement. Dominique's morning stiffness decreased from 15 minutes to five minutes, and both her sleep and fatigue improved. (T. 1157). Dominique also noted "significant improvement in her symptoms" due to Saphnelo infusions. (*Id.*).

But Dominique's joint pain did not vanish. In June 2022, Dominique reported joint and neck pain when being assessed for left knee pain. (T. 1345). In February 2024, Dominique was "feeling well" and "in good spirits" before and after receiving a Saphnelo infusion. (T. 1574). But in the following month, a provider noted that Dominique "continues to have moderate exacerbation of generalized joint pain about 1 week" before she is scheduled to receive her monthly Saphnelo infusion. (T. 2046). Dominique also reported morning stiffness that lasts between five and 10 minutes. (T. 2047). Ultimately, that provider noted that Dominique has fibromyalgia related pain. (*Id.*).

ALJ Theurer's decision does not meaningfully address Dominique's long history of fibromyalgia symptoms and relies on only objective clinical findings. *See* (T. 16-18). When performing the supportability and consistency analyses, ALJ Theurer articulated that

P.A. Gaskill, found Dominique to have "no tenderness, weakness, or unrestricted motion" in her "upper or lower extremities." (T. 18). With that evidence, ALJ Theurer found P.A. Gaskill's medical source statement unsupported by her medical findings and inconsistent with the record. (*Id.*).

ALJ Theurer's sole reliance on the objective clinical findings was error. Indeed,  ALJs err when they "place[] undue emphasis on plaintiff[s'] 'benign' physical examination findings. In doing so, . . . ALJ[s] fail[] to show an appreciation of the well-settled understanding that fibromyalgia impairments may not manifest in abnormal objective findings." *Melanya B. v. Comm'r of Soc. Sec.*, No. 22-CV-6125, 2024 WL 4223655, at *4 (W.D.N.Y. 2024) (internal citation omitted).Yet here, ALJ Theurer relied on only objective clinical findings when finding P.A. Gaskin's medical source statement unsupported by her treatment notes. ALJ Theurer's *over* reliance on objective clinical findings when performing the supportability and consistency analyses was error. *See Lisa E. v. Comm'r of Soc. Sec.*, No. 20-CV-0037, 2021 WL 4472469, at *7 (W.D.N.Y. 2021) (reversing the ALJ's decision where the court found "that the ALJ unduly emphasized the absence of abnormal results

during plaintiff's physical examinations – without a demonstrated understanding of the nature of fibromyalgia – particularly in finding that Gallagher-Bartholomew's and Dr. Bartholomew's opined limitations were unsupported by their own treatment notes."). In short, ALJ Theurer's supportability and consistency analyses were flawed. So substantial evidence does not support ALJ Theurer's decision.

The natural counter-argument—that medicine addressed Dominque's fibromyalgia symptoms, so ALJ Theurer's reliance on the objective evidence was proper—is unpersuasive. "The signs and symptoms of fibromyalgia vary in severity overtime and may even be absent on some days." SSR 12-2P, 2012 WL 3104869, at *4 (July 25, 2012) (cleaned up). And while her fibromyalgia symptoms may have been mild during her consultative examinations (Dr. Lorensen found four fibromyalgia trigger points during her consultative examination of Dominque), Dominque's testimony supports her position that her fibromyalgia is severe now. *See Ian S. v. Comm'r of Soc. Sec.*, No. 20-CV-6022-A, 2021 WL 3292203, at *6 (W.D.N.Y. 2021) ("[i]n cases where fibromyalgia is the alleged disability, a claimant's testimony, regarding [their] symptoms from the disorder, should be given increased

importance in the ALJ's determination of whether the claimant is disabled."). Dominique testified that she suffers from pain in her neck, left shoulder, hips, left knee, fatigue, tiredness, depression, and anxiety. (T. 51, 54, 55). All of these issues are associated with fibromyalgia. *See Davis v. Berryhill*, No. 16-CV-954, 2018 WL 4629126, *4 (W.D.N.Y. 2018) (noting that common symptoms associated with fibromyalgia, include "body-wide pain and tender points in joints, muscles, tendons, and other soft tissues," as well as "fatigue, sleep problems, headaches, depression, anxiety, and other symptoms"). ALJ Theurer needed to assess whether the *current* severity of Dominique's fibromyalgia affects her ability to sustain full time employment. Yet he did not do so. As a result, any argument that medicine controlled Dominique's fibromyalgia does not overcome ALJ's Theurer's failure to discuss the impact fibromyalgia has on Dominique.

To be sure, ALJ Theurer acknowledges that Dominique testified about fibromyalgia's impact on her life, but he does nothing else with the testimony. *See* (T. 16-18). Examining ALJ Theurer's decision, the Court can glean that he rejected Dominique's testimony, in addition to the objective medical evidence, because of records—from 2021 to early

2023—that indicate that Dominique went to her mother's house for barbeques on two separate occasions, rode a bike around Onondaga lake to celebrate her 11-year anniversary with her fiancé, takes her children trick or treating, spends time with friends and family, goes out for walks, and completes her activities of daily living without effort. (T. 14) citing (T. 1890, 1900, 1916, 1928, 1962, 1973, 1986, 1991, 2000, 2009). But those records do not present a full picture. For example, records after early 2023 no longer indicate that Dominique performed her activities of daily living without difficulty. *See, e.g.,* (T. 2009, 2015, 2019, 2024, 2031). Beyond that, Dominique testified that her ability to perform physical activities deteriorated. *See* (T. 48, 49, 57, 58); *see also Ian S.*, 2021 WL 3292203, at *6. In other words, ALJ Theurer needed to use more recent evidence to exemplify Dominique's inability to work.

The Commissioner's argument on appeal—substantial evidence supports ALJ Theurer's supportability and consistency analyses because the ALJ discussed objective clinical evidence associated with fibromyalgia—is unpersuasive. The Commissioner's argument suffers from the same defect ALJ Theurer's decision does: The argument's central focus is objective evidence. *See* (Def. Br. at pgs. 6-10). And this

Court has already rejected that argument. *See Tabitha L. v. Dudek*, No. 3:24-CV-476 (AJB/MJK), 2025 WL 1448566, at *7 (N.D.N.Y. May 5, 2025) (cleaned up) (recommending the District Court reverse the ALJ's decision because "the ALJ should not have placed excessive reliance on objective tests and the lack of objective findings). Thus, this Court finds the Commissioner's argument unpersuasive.

* * *

The Court finds that substantial evidence does not support ALJ Theurer's decision. To sum up, ALJ Theurer relied on only objective clinical findings when performing the supportability and consistency analysis on PA Gaskill's medical source statement. That over reliance on objective evidence—which misses the insidious nature of fibromyalgia—is error.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Dominique's motion for judgment on the

pleadings (Dkt. 13) be **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the

pleadings (Dkt. 15) be **DENIED**; and it is further

**ORDERED**, that the ALJ's decision be **REVERSED** and

**REMANDED**.


Dated: December 11, 2025

_____

Hon. Mitchell J. Katz
U.S. Magistrate Judge